## DOVER BREWING CO.
*vs.*
## ARMOUR & COMPANY

Superior Court          Hartford County          File No. 63362

MEMORANDUM FILED FEBRUARY 9, 1942.

*Shipman & Goodwin,* of Hartford, for the Plaintiff.

*Pond, Morgan & Morse,* of New Haven, for the Defendant.

BALDWIN, J.  On June 6, 1939, the defendant delivered to the plaintiff a metal tank or cylinder of liquid ammonia to be used by the plaintiff in its cooling system in its brewery. The cylinder containing the ammonia was approximately seven feet long and ten inches in diameter.  It contained 100 pounds of liquid ammonia, having been approximately 78% full— approximately 22% of the space within the cylinder being left for expansion of the ammonia resulting from a rise in the temperature affecting the ammonia within the cylinder.

Liquid ammonia, when confined within a vessel, creates a pressure depending upon the temperature to which it is subjected.  At a temperature of 78 degrees Fahrenheit the pressure within the cylinder containing it is 147.9 pounds per square inch and at 88 degrees the pressure is 174.8 pounds per square inch, and at 90 degrees the pressure is 180.6 pounds per square inch.

On July 3, 1939, this cylinder of ammonia was laid alongside of a large metal tank, a part of plaintiff's cooling system, and attached to the cooling system by means of a small metal pipe.  After the cylinder of ammonia is attached to the cooling system and the connections are tested for the purpose of discovering whether there is any leakage, a valve at one end of the cylinder, known as the cylinder valve, where the pipe connecting it to the cooling system is attached, is opened and a charging valve located in the system and near the connecting pipe is also opened.  The opening of these two valves admits the ammonia to pass from the cylinder into the cooling system. A valve known as a King valve connects the cooling system with the large receiving tank which also contains ammonia.

To discharge the ammonia from the cylinder directly into the cooling system the King valve must be closed to the receiving tank and open to the cooling system.  This admits the ammonia from the cylinder to by-pass the receiving tank and flow into the cooling system.  With the King valve closed,

the line to the cooling system is a low pressure line, the pressure being from one to three pounds per square inch, and the cylinder is emptied into the system by means of the pressure within the cylinder.

About ten o'clock in the forenoon of July 3, 1939, an employee of the plaintiff attached the cylinder to the cooling system. After testing the connection to discover any leaks the King valve was closed, the charging valve and the cylinder valves were opened. The temperature at this time was 78 degrees and the pressure within the cylinder was 147.9 pounds per square inch; it was attached to a low pressure line, the pressure of which was, as stated, somewhere from one to three pounds per square inch.

It was claimed that the cylinder emptied itself in about 45 minutes and that after the cylinder was emptied the cylinder valve and the charging valve were closed and the King valve was opened. The cylinder remained attached to the line until five minutes to four o'clock in the afternoon of the next day, when it exploded, causing damage to the building in which it was located and to some of the cooling system.

This action is to recover for these damages. The claim is that the cylinder was defective in that the metal had deteriorated and crystallized and was insufficient to restrain the normal pressure of the ammonia and that the defendant was negligent in that it delivered the ammonia in a defective cylinder.

The force of the explosion tore open the cylinder approximately two-thirds of its length and nearly flattened the metal of which it was made and after the explosion it was found outside of the building, the force of the explosion having carried it through the side of the building. The cylinder, empty, weighed 175 pounds.

After the explosion, a fireman, equipped with a gas mask, entered that part of the building where the explosion occurred and closed the charging valve from which he found some vapor and dampness escaping and he also closed the King valve. There was no evidence offered as to the condition of the cylinder valve after the explosion.

Tests were made of samples of the metal taken from the exploded cylinder and there was evidence that the inside pressure causing the explosion was approximately 2,000 pounds, or upwards, to the square inch.

Requirements of the Interstate Commerce Commission provide that tests of cylinders, used for the purpose for which this was used, shall be made once in each ten years and that such cylinder shall be capable of withstanding an inside pressure of 700 pounds to the square inch. This cylinder withstood this required test approximately six years ago.

From the evidence in the case it is clear that after the cylinder had discharged its contents of ammonia, the charging and cylinder valves were not so closed as to prevent the cylinder from refilling and the King valve was so left as to cause the cylinder to refill and to become filled to its capacity, and becoming so filled, and the temperature in the afternoon of July 4, 1939, at the time of the explosion, having risen to 90 degrees, the inside pressure in the cylinder rose to 2,000 pounds, or upwards, to the square inch and caused the explosion. This was a greater pressure than the cylinder was capable of or required to withstand. It was not the result of any negligence of the defendant. It was the neglect of the plaintiff in failing to give the cylinder and its connection and the valves the proper attention after it had become empty.

Judgment may therefore enter for the defendant.